**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
201 EAST WASHINGTON STREET, SUITE 800
PHOENIX, ARIZONA 85004-2327
TELEPHONE: (602) 240-3000
FAX: (602) 240-6600
(AZ BAR FIRM NO. 00441000)

David A. Weatherwax (No. 006996)
(dweatherwax@shermanhoward.com)
Bryan A. Albue (No. 009594)
(balbue@shermanhoward.com)
Dewain D. Fox (No. 014431)
(dfox@shermanhoward.com)
Attorneys for Sherman & Howard L.L.C.

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>DARREN L. SCOTT AND KATHRYN A. SCOTT aka KATHRYN A. RUSSELL,<br><br>Debtors.<br><br>CHRIS SABIA AND PAM SABIA,<br><br>Movants,<br><br>v.<br><br>DARREN L. SCOTT AND KATHRYN A. SCOTT aka KATHRYN A. RUSSELL,<br><br>Respondents. | In Proceedings Under Chapter 7<br><br>Case No. 3:13-bk-02829-DPC<br><br>**OBJECTION TO MOTION FOR RELIEF FROM STAY FILED BY CHRIS SABIA AND PAM SABIA**<br><br>Date: July 25, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom No. 601, 6th Fl.<br>230 N. First Ave.<br>Phoenix, Arizona |

Sherman & Howard L.L.C. ("Sherman & Howard") files its Objection to the Motion for Relief from Stay (the "Motion") filed by Chris and Pam Sabia (the "Sabias"). The Objection to the Motion is supported by the following Memorandum of Points and Authorities, which is incorporated herein by reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF FACTS**

1.    Sherman & Howard, through attorney Michael Wright, represented Darren and Kathryn Scott (the "Scotts"), the debtors in this Chapter 7 case, in an

action against the Sabias in the Maricopa County Superior Court (the "State Court Action"). The State Court Action arose out of: (i) the Scotts' purchase of a residential lot in the Las Ventanas Subdivision (the "Property") in Cave Creek, Arizona (the "Town") from the Sabias in February 2007; and (ii) the Sabias' failure to disclose to the Scotts prior to the sale that the Town planned to build a wastewater treatment plant (the "Sewage Plant") near the Property.

2. The Scotts purchased the Property from the Sabias pursuant to a Vacant Land Lot Purchase Contract (the "Contract") dated on or around January 18, 2007. The Contract required the Sabias to provide to the Scotts a Seller Property Disclosure Statement (the "SPDS") within five days after acceptance of the Contract. On January 20, 2007, the Sabias submitted the SPDS to the Scotts. Mr. Sabia signed the Seller Certification on the SPDS, which provides that "Seller certifies that the information contained herein is true and complete to the best of Seller's knowledge as of the date signed. . . ."

3. Line 10 of the SPDS required the Seller to answer "[t]o your knowledge, is the Property within a subdivision approved by the Arizona Department of Real Estate?" Line 11 of the SPDS states, "[i]f yes, attach a copy of the Subdivision Public Report." The Sabias checked "yes" to the question on line 10, but failed to attach a copy of the Subdivision Public Report to the SPDS.

4. Lines 167 to 183 of the SPDS asked the Seller: "Is there any other information concerning the Property that might affect the decision of a buyer to buy, or affect the value of the Property's use by a buyer? Explain." Sabias left this section blank.

5. Although the Sabias failed to attach a copy of the Subdivision Public Report to the SPDS, the Sabias admit that they received a copy of the Report from the seller (Ventanas Development Partners, LLC) before the Sabias purchased the Property on or about July 6, 2005. The Subdivision Public Report provides (among other things):

> Purchaser is advised that the subdivider is obligated to transfer Tract C of the subdivision to the Town of Cave Creek for the potential expansion of the Town's wastewater treatment facilities. While there are presently no plans to expand such facilities, Purchaser is advised that Tract C is not subject to the Covenants, Conditions and Restrictions to be recorded against the subdivision and that Tract C may be utilized for municipal uses, including, but not limited to wastewater treatment functions.

6. Tract C of the Las Ventanas Subdivision is approximately one eighth of a mile to the north of the Property. In December 2006, after the Town learned that Tract C was not a suitable site for the Sewage Plant, the Town purchased the 76-acre parcel (the "Adjacent Parcel") immediately adjacent to the Property on the west. When the Scotts purchased the Property in January 2007, they did not know about the Town's plans to build the Sewage Plant anywhere near the Property--whether on Tract C or the Adjacent Parcel. If they had known, then they would not have purchased the Property.

7. Shortly after purchasing the Property, the Scotts constructed a large custom home on the Property. In August 2008, the Scotts noticed a large sign posted near 44th Street and the Carefree Highway to announce the Town's plans to build the Sewage Plant on the Adjacent Parcel--essentially in the Scotts' back yard. The Town since has completed construction of the Sewage Plant on the Adjacent Parcel.

8. In December 2008, the Scotts listed their home on the Property for sale at $2.9 million. The Scotts were not able to sell their home, even though they substantially reduced the listing price to $800,000. On June 22, 2011, the Scotts finally sold their home at a significant loss. Multiple potential buyers identified the home's proximity to the Sewage Plant as a reason for not purchasing the home.

9. On January 16, 2010, the Scotts engaged Sherman & Howard to represent them in seeking redress for the failure to disclose the Town's plan to build the Sewage Plant near the Property. On March 9, 2010, Sherman & Howard filed the Verified Complaint in the State Court Action, which asserted four claims against the Sabias: (i) Count I for actual fraud/fraudulent concealment/fraud in the inducement; (ii) Count III for negligent misrepresentation; (iii) Count V for breach of contract; and

(iv) Count VI for breach of contract and breach of the implied covenant of good faith and fair dealing.

10. On January 24, 2011, the Sabias filed a Motion for Summary Judgment on the claims asserted against them. On April 8, 2011, after briefing and oral argument, the Court denied the Sabias' Motion. On February 22, 2011, Sherman & Howard filed Plaintiffs' Motion for Leave to Amend Their Complaint, in order to: (i) address facts developed in the course of discovery; and (ii) clarify the factual basis of the Scotts' claims in the State Court Action. None of the parties in the State Court Action, including the Sabias, objected to the Motion for Leave to Amend and, on March 30, 2011, the Court granted the Motion. Accordingly, on April 6, 2011, Sherman & Howard filed the Scotts' First Amended Verified Complaint.

11. On April 14, 2011, the Sabias filed the "Answer to First Amended Verified Complaint and Cross-Claim of Defendants Sabia"

12. Beginning on May 21, 2012, a six-day jury trial was held in the State Court Action. At the beginning of the fifth day of trial (May 29, 2012), the Sabias moved for judgment as a matter of law as to all claims against them and with respect to the collateral source rule. The Court denied the Sabias' motion as to (i) the collateral source rule, and (ii) all claims except Count I for fraud. At the end of trial that same day, the Sabias re-urged their motion. The Court again denied the motion.

13. On May 30, 2012, the jury returned a verdict for the defendants in the State Court Action. On June 5, 2012, the Sabias filed their Application for Attorney's Fees. The Scotts filed their Response on June 20, 2012. On October 16, 2012, Judgment was entered in the State Court Action against the Scotts.

14. On October 31, 2012, the Scotts filed their Motion for New Trial, Motion to Alter or Amend Judgment and Motion to Stay Execution of or any Proceedings to Enforce Judgment (the "Post-Trial Motions"). On November 13, 2012, the Sabias filed their Reponses to the Post-Trial Motions. The Scotts filed their petition under Chapter 7 on February 28, 2013. At the time the Scotts filed their bankruptcy petition, the

Court in the State Court Action had not yet entered a ruling on the Post-Trial Motions.

15.   This bankruptcy case currently is designated a no-asset case and the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines dated May 30, 2013 directs creditors not to file proofs of claim.

16.   On April 29, 2013, Sabias filed an Adversary Complaint to Determine Dischargeability – 11 U.S.C. § 523(a)(6) (the "Adversary Proceeding"), wherein Sabias asserted that certain alleged claims arising from and relating to the State Court Action were not subject to discharge. On June 28, 2013, a Minute Entry was entered dismissing the Adversary Proceeding for failure to appear and prosecute, because of the Sabias' failure to appear at a Rule 16 Scheduling Conference set on June 24, 2013.

## II.   LEGAL ARGUMENT

### A.   The Automatic Stay is Applicable to Further Proceedings in the State Court Action, including Efforts to Obtain a Ruling on the Motion for New Trial.

The mere fact that the Scotts are the plaintiffs in the State Court Action does not render the automatic stay inoperative. Rather, the Ninth Circuit has held that courts must examine the proceedings as a whole to determine the overall impact. *Delpit v. C.I.R.*, 18 F.3d 768, 772-73 (9th Cir. 1994); *In re Bloom*, 875 F.2d 224, 226 (9th Cir. 1989). The Scotts filed the State Court Action to pursue claims which they believed have significant value. The Motion for New Trial and related activities are in furtherance of the pursuit and preservation of those claims. Those claims became property of the estate upon the filing of the bankruptcy petition.

Pursuant to 11 U.S.C. § 362, the "automatic stay" is now applicable as to all property of the estate, which includes legal and equitable interests, including legal claims. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). Thus, any action that affects causes of action violates the automatic stay. *In re Sambo's Restaurants, Inc.*, 754 F.2d 811, 816 (9th Cir. 1985). *See,* 11 U.S.C. § 362(a)(3) (The automatic stay precludes "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;").

**B. The Sabias are Not Entitled to Relief from the Automatic Stay to Proceed in the State Court Action.**

The Sabias' Motion provides a general overview of certain events that occurred in connection with the State Court Action and then separately notes various factors that a court may consider when presented with a motion for relief from stay to pursue an action in a non-bankruptcy forum. Nowhere in the Motion, however, is there a discussion as to how the facts in this case support the relief requested or even apply. The Motion, therefore, provides no support for the relief requested and fails as a matter of law.

The Court in *In re America West Airlines*, 148 B.R. 920, 923 (Bankr. D. Ariz. 1993) provides an instructive discussion of the potential factors that may weigh on the decision of whether to vacate the automatic stay to allow a pending action to proceed in a non-bankruptcy forum. A review of the applicable factors establishes that the Sabias are not entitled to relief from the automatic stay.

Initially, as noted above, the bankruptcy estate now is the holder of the claims asserted in the State Court Action. Currently, this case is listed as a no-asset case. As such, creditors have been instructed not to file proofs of claim. Therefore, for purposes of determining potential claims against the estate, there is no reason to expend time and resources to liquidate potential claims against the estate at the present time.

In addition, the Adversary Proceeding wherein the Sabias asserted that certain alleged claims arising from and relating to the State Court Action were not subject to discharge was dismissed for failure to appear and prosecute. Pursuant to Rule 41(b), which is applicable pursuant to Rule 7041 and governs involuntary dismissals, the dismissal operates as an adjudication on the merits. Therefore, pursuit of efforts to liquidate claims in the State Court Action is not necessary for any attempt to hold such claims nondischargeable the Sabias might have contemplated.

Finally, while the Scotts did not prevail at the trial, the Motion for New Trial sets forth important bases whereby the Scotts should be granted a new trial. Should the stay be vacated, the Motion for New Trial must be vigorously pursued, if the value of

the claims asserted by the Scotts in the State Court Action is to be preserved.

The Chapter 7 trustee is now the party charged with pursuing the State Court Action. At this time, it is not known what course of action the Chapter 7 trustee intends to take with respect to the Motion for New Trial or other aspects of the State Court Action. At a minimum, it appears that the estate lacks the resources to continue with the State Court Action at this time. There is no known insurance that will cover the costs of proceeding with the State Court Action. In addition, the Chapter 7 trustee was not an original party to the State Court Action and it is unknown what information and other resources will be needed in order to pursue the Motion for New Trial and other pending matters in the State Court Action.

Alternatively, whether for lack of funds or the Chapter 7 trustee otherwise elects not to pursue claims in the State Court Action, the opportunity to pursue such claims, whether through abandonment or otherwise, should be provided to the Scotts or others who may wish to undertake such efforts. Whatever the course of action, the proceedings in the State Court Action must be meaningful and, if the stay is vacated, the claims of the estate cannot be left undefended against the efforts of the Sabias.

In conclusion, the relief requested in the Motion is, at best, premature and allowing such effort to proceed will result in needless expense and prejudice to the estate. Conversely, Sabias have demonstrated no need for the relief or hardship that will result if the Motion is denied. Alternatively, in the event the automatic stay is vacated, steps must be taken prior thereto to ensure that the claims of the Scotts now held by the estate are adequately represented, whether by the Chapter 7 trustee, the Scotts or some other interested third party.

### C. Sabias Failed to Follow the Local Rules in Connection with the Motion.

There is no evidence that the Sabias provided the notice required under Local Rule 4001-1(d). In addition, there is no evidence that the Sabias have prepared and provided a proposed Order as required in the Local Rules. Finally, Sherman & Howard

is a "party known to movant to claim an interest in the property that is the subject of the motion" and it was not served with a copy of the Motion, proposed order or notice.

WHEREFORE, Sherman & Howard requests the Court to:

1. Deny the Motion;

2. In the alternative, find that the Motion is premature and either hold the Motion in abeyance or deny the Motion without prejudice, subject to refiling or reconsideration at such time when there is an express need to complete the litigation in the State Court Action and liquidate the relevant claims, and/or when adequate steps have been taken to ensure that the claims of the Scotts now held by the estate are adequately represented, whether by the Chapter 7 trustee, the Scotts or some other interested third party;

3. Allow Sherman & Howard to review and approve any proposed Order that may be submitted in connection with the Motion;

4. Award other and further relief as is just and proper.

DATED: July 23, 2013

SHERMAN & HOWARD L.L.C.

By /s/ Bryan A. Albue (No. 009594)
David A. Weatherwax
Bryan A. Albue
Dewain D. Fox
201 East Washington Street, Suite 800
Phoenix, Arizona 85004-2327
Attorneys for Sherman & Howard L.L.C.

1  COPY of the foregoing served by
   email on July 23, 2013 to:
2
   Peter Strojnik, Esq.
3  STROJNIK, P.C.
   2415 East Camelback, Suite 700
4  Phoenix, Arizona 85016
   strojnik@aol.com
5  Attorney for Creditors Sabia

6  James Schollian, Esq.
   SCHOLLIAN LAW FIRM, P.C.
7  1146 North Mesa Drive, Suite 102
   Box 252
8  Mesa, Arizona 85201
   scholljjsl@gmaol.com
9  Attorney for Debtors

10 Constantino Flores
   PO Box 511
11 Phoenix, Arizona 85001-0511
   trusteeflores@floreslawaz.com
12 Chapter 7 Trustee

13

14     /s/ Bryan A. Albue (No. 009594)