**LAW OFFICES**
**SHERMAN & HOWARD L.L.C.**
201 EAST WASHINGTON STREET, SUITE 800
PHOENIX, ARIZONA 85004-2327
TELEPHONE: (602) 240-3000
FAX: (602) 240-6600
(AZ BAR FIRM NO. 00441000)

David A. Weatherwax (No. 006996)
(dweatherwax@shermanhoward.com)
Bryan A. Albue (No. 009594)
(balbue@shermanhoward.com)
Dewain D. Fox (No. 014431)
(dfox@shermanhoward.com)
Attorneys for Sherman & Howard L.L.C.

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings Under Chapter 7 |
| DARREN L. SCOTT AND KATHRYN A. SCOTT aka KATHRYN A. RUSSELL,<br><br>Debtors. | Case No. 3:13-bk-02829-DPC<br><br>**OBJECTION TO MOTION FOR CONTEMPT; AND**<br><br>**MOTION TO VACATE OR HOLD IN ABEYANCE ORDER GRANTING CREDITOR SABIA'S MOTION FOR ORDER DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION ENTERED MARCH 25, 2013**<br><br>Date: July 25, 2013<br>Time: 11:00 a.m.<br>Place: Courtroom No. 601, 6th Fl.<br>230 N. First Ave.<br>Phoenix, Arizona |

Sherman & Howard L.L.C. ("Sherman & Howard") files its Objection to the Motion for Contempt (the "Motion for Contempt") filed by Chris and Pam Sabia (the "Sabias") on April 29, 2013. Sherman & Howard also files its Motion to Vacate or Hold in Abeyance Order Granting Creditor Sabia's Motion for Order Directing Production of Documents and Examination Entered March 25, 2013. The Objection to the Motion is supported by the following Memorandum of Points and Authorities, which is incorporated herein by reference.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

1. Sherman & Howard, through attorney Michael Wright, represented Darren and Kathryn Scott (the "Scotts"), the debtors in this Chapter 7 case, in an action against the Sabias in the Maricopa County Superior Court (the "State Court Action"). The State Court Action arose out of: (i) the Scotts' purchase of a residential lot in the Las Ventanas Subdivision (the "Property") in Cave Creek, Arizona (the "Town") from the Sabias in February 2007; and (ii) the Sabias' failure to disclose to the Scotts prior to the sale that the Town planned to build a wastewater treatment plant (the "Sewage Plant") near the Property.

2. The Scotts purchased the Property pursuant to a Vacant Land Lot Purchase Contract (the "Contract") dated on or around January 18, 2007. The Contract required the Sabias to provide to the Scotts a Seller Property Disclosure Statement (the "SPDS") within five days after acceptance of the Contract. On January 20, 2007, the Sabias submitted the SPDS to the Scotts. Mr. Sabia signed the Seller Certification on the SPDS, which provides that "Seller certifies that the information contained herein is true and complete to the best of Seller's knowledge as of the date signed. . . ."

3. Line 10 of the SPDS required the Seller to answer "[t]o your knowledge, is the Property within a subdivision approved by the Arizona Department of Real Estate?" Line 11 of the SPDS states, "[i]f yes, attach a copy of the Subdivision Public Report." The Sabias checked "yes" to the question on line 10, but failed to attach a copy of the Subdivision Public Report to the SPDS.

4. Lines 167 to 183 of the SPDS asked the Seller: "Is there any other information concerning the Property that might affect the decision of a buyer to buy, or affect the value of the Property's use by a buyer? Explain." Sabias left this section blank.

5. Although the Sabias failed to attach a copy of the Subdivision Public Report to the SPDS, the Sabias admit that they received a copy of the Report from the seller (Ventanas Development Partners, LLC) before the Sabias purchased the Property

on or about July 6, 2005. The Subdivision Public Report provides (among other things):

> Purchaser is advised that the subdivider is obligated to transfer Tract C of the subdivision to the Town of Cave Creek for the potential expansion of the Town's wastewater treatment facilities. While there are presently no plans to expand such facilities, Purchaser is advised that Tract C is not subject to the Covenants, Conditions and Restrictions to be recorded against the subdivision and that Tract C may be utilized for municipal uses, including, but not limited to wastewater treatment functions.

6. Tract C of the Las Ventanas Subdivision is approximately one eighth of a mile to the north of the Property. In December 2006, after the Town learned that Tract C was not a suitable site for the Sewage Plant, the Town purchased the 76-acre parcel (the "Adjacent Parcel") immediately adjacent to the Property on the west. When the Scotts purchased the Property in January 2007, they did not know about the Town's plans to build the Sewage Plant anywhere near the Property--whether on Tract C or the Adjacent Parcel. If they had known, then they would not have purchased the Property.

7. Shortly after purchasing the Property, the Scotts constructed a large custom home on the Property. In August 2008, the Scotts noticed a large sign posted near 44th Street and the Carefree Highway to announce the Town's plans to build the Sewage Plant on the Adjacent Parcel--essentially in the Scotts' back yard. The Town since has completed construction of the Sewage Plant on the Adjacent Parcel.

8. In December 2008, the Scotts listed their home on the Property for sale at $2.9 million. The Scotts were not able to sell their home, even though they substantially reduced the listing price to $800,000. On June 22, 2011, the Scotts finally sold their home at a significant loss. Multiple potential buyers identified the home's proximity to the Sewage Plant as a reason for not purchasing the home.

9. On January 16, 2010, the Scotts engaged Sherman & Howard to represent them in seeking redress for the failure to disclose the Town's plan to build the Sewage Plant near the Property. On March 9, 2010, Sherman & Howard filed a Verified Complaint in the State Court Action, which asserted four claims against the Sabias: (i) Count I for actual fraud/fraudulent concealment/fraud in the inducement; (ii) Count III

for negligent misrepresentation; (iii) Count V for breach of contract; and (iv) Count VI for breach of contract and breach of the implied covenant of good faith and fair dealing.

10. On January 24, 2011, the Sabias filed a Motion for Summary Judgment on the claims asserted against them. On April 8, 2011, after briefing and oral argument, the Court denied the Sabias' Motion. On February 22, 2011, Sherman & Howard filed Plaintiffs' Motion for Leave to Amend Their Complaint, in order to: (i) address facts developed in the course of discovery; and (ii) clarify the factual basis of the Scotts' claims in the State Court Action. None of the parties in the State Court Action, including the Sabias, objected to the Motion for Leave to Amend and, on March 30, 2011, the Court granted the Motion. Accordingly, on April 6, 2011, Sherman & Howard filed the Scotts' First Amended Verified Complaint.

11. On April 14, 2011, the Sabias filed the "Answer to First Amended Verified Complaint and Cross-Claim of Defendants Sabia"

12. Beginning on May 21, 2012, a six-day jury trial was held in the State Court Action. At the beginning of the fifth day of trial (May 29, 2012), the Sabias moved for judgment as a matter of law as to all claims against them and with respect to the collateral source rule. The Court denied the Sabias' motion as to (i) the collateral source rule, and (ii) all claims except Count I for fraud. At the end of trial that same day, the Sabias re-urged their motion. The Court again denied the motion.

13. On May 30, 2012, the jury returned a verdict for the defendants in the State Court Action. On June 5, 2012, the Sabias filed their Application for Attorney's Fees. The Scotts filed their Response on June 20, 2012. On October 16, 2012, Judgment was entered in the State Court Action against the Scotts.

14. On October 31, 2012, the Scotts filed their Motion for New Trial, Motion to Alter or Amend Judgment and Motion to Stay Execution of or any Proceedings to Enforce Judgment (the "Post-Trial Motions"). On November 13, 2012, the Sabias filed their Reponses to the Post-Trial Motions.

15. On November 19, 2012, in retaliation for the State Court Action, Sabias

filed an action in the Maricopa County Superior Court (the "Second State Court Action"). The Scotts, Michael and Jane Doe Wright (the "Wrights") and Sherman & Howard were named as defendants in the Second State Court Action.

16. The original Complaint filed in the Second State Court Action asserted six claims, all of which were premised on the Sabias' contention that the State Court Action was "baseless". On December 12, 2012, the Sherman & Howard and the Wrights (collectively, the "Sherman & Howard Defendants") filed a Motion to Dismiss the Complaint, pursuant to Rule 12(b)(6) of the Arizona Rule of Civil Procedure. On February 25, 2013, the Court dismissed all claims except Count One (abuse of process) pursuant to Rule 12(b)(6), but granted Sabias leave to amend some of their claims.

17. On February 25, 2013, Sabias filed their 1st Amended Complaint (the "Amended Complaint"). The Amended Complaint included four counts, including: (i) abuse of process; (ii) aiding and abetting; (iii) civil conspiracy and (iv) engaging in a pattern of unlawful activity in violation of state statute A.R.S. 13-2314.04 (RICO).

18. On March 18, 2013, the Sherman & Howard Defendants filed their Motion to Dismiss Counts Three and Four of the Amended Complaint and to Strike the Prefaratory [sic] Statement thereto (the "Motion to Dismiss").

19. Oral argument was held on the Motion to Dismiss on May 1, 2013. On May 7, 2013, the Court entered Orders striking the Prefaratory [sic] Statement and dismissing Counts Three and Four to the Amended Complaint.

20. On June 5, 2013, Sabias filed a Motion for Partial Summary Judgment (Liability Only) in the Second State Court Action and, on June 10, 2013, the Sherman & Howard defendants filed their Motion for Summary Judgment on Counts One and Two of the Amended Complaint. The briefing is not yet complete on the respective motions for summary judgment.

21. The Scotts filed their petition under Chapter 7 on February 28, 2013. At the time the Scotts filed their bankruptcy petition, the Court in the State Court Action had not yet entered a ruling on the Post-Trial Motions.

22. The Schedules, Statement of Financial Affairs and other documents were filed with the petition. The first meeting of creditors was set for April 22, 2013.

23. On March 21, 2013, prior to the first meeting of creditors, Sabias filed their Motion for Order Requiring Examination of Debtors Pursuant to Rule 2004 (the "Rule 2004 Motion"). The Rule 2004 Motion notes the claims of Sabias and Sherman & Howard listed in the Schedules, but provides no justification as to why further examination of the Scotts was warranted. The Sabias did not serve the Sherman & Howard Defendants with a copy of the Rule 2004 Motion.

24. This Court entered and Order granting the Rule 2004 Motion (the "Rule 2004 Order") on March 25, 2013. The Rule 2004 Order requires production of documents relating to, among other things: (i) Scotts' real property in Munds Park Arizona; (ii) other real property in which the Scotts have held an interest in the last five years; (iii) personal property described on Schedule B; (iv) exempt property listed on Schedule C; (v) bank statements for the last five years; (vi) credit card statements for the last five years; (vii) all loan and other documents relating to any claim, whether listed on Schedule F or not; (viii) tax returns; (ix) proof of income; and (x) invoices, bills and other statements for expenses listed on Schedule J. Notably, Sabias also asked for documents relating to the representation of the Scotts in the State Court Action, including "All documents provided to Sherman & Howard relating to the claims asserted in the litigation disclosed in [the State Court Action]."

25. Pursuant to discovery conducted in the Second State Court Action, the Sabias produced an email, a copy of which is attached hereto, sent March 25, 2013 at 2:24 p.m. from Mr. Strojnik to Dax Watson, another attorney involved in the State Court Action, which stated:

> As you may know, I filed suit against Mike Wright, Sherman & Howard and the Scotts for abuse of process and ancillary causes of action. The Scotts promptly filed bankruptcy. This works well for us because we have better access to his documents than we would otherwise have; in fact we have already obtained a Rule 2004 Order from the BK court ordering the Scotts to provide us with pretty much every shred of documentation in the [State Court Action].

26. On April 29, 2013, the Sabias filed the Motion for Contempt on the basis that the Scotts failed to provide documents in accordance with the Rule 2004 Order.

27. On April 29, 2013, Sabias filed an Adversary Complaint to Determine Dischargeability – 11 U.S.C. § 523(a)(6) (the "Adversary Proceeding"), wherein Sabias asserted that certain alleged claims arising from and relating to the State Court Action were not subject to discharge. On June 28, 2013, a Minute Entry was entered dismissing the Adversary Proceeding for failure to appear and prosecute, because of the Sabias' failure to appear at a Rule 16 Scheduling Conference set on June 24, 2013.

28. The Scotts failed to appear at their first meeting of creditors and, at the Chapter 7 Trustee's request, and Order dismissing the case was entered on May 9, 2013.

29. The Scotts retained new bankruptcy counsel and, pursuant to a Motion to Reinstate Chapter 7 Case filed on May 12, 2013, the Court entered an Order reinstating the case on May 30, 2013.

30. The first meeting of creditors was held and concluded on July 22, 2013.

31. On July 23, 2013, Sabias filed their Certificate of Good Faith Attempt to Resolve Discovery Dispute with respect to the Motion to Compel. Reliance on compliance with the requirement to attempt in good faith to resolve the dispute over the Rule 2004 Order was based an email exchange between the Sabias' counsel and the Scotts' prior bankruptcy attorney on April 26 and 27, 2013, which was just two days before the Motion to Compel was filed.

## II. **LEGAL ARGUMENT**

The Motion for Sanctions should be denied and the Rule 2004 Order vacated or held in abeyance because the Rule 2004 Motion was filed for no legitimate purpose and among other things, represents an impermissible use of Rule 2004 designed to obtain discovery in the pending state court actions. In addition, the Motion to Compel is premature as the Sabias have not demonstrated that a good faith attempt to resolve this discovery dispute was made, as required by Local Rule 9013-1(e) and this Court's procedures.

**A. The Rule 2004 Motion was Filed for No Legitimate Purpose and, Among Other Things, is an Impermissible Attempt to use of Rule 2004 to Obtain Discovery in the State Court Actions.**

The purpose of Rule 2004 is "to allow the court to gain a clear picture of the condition and the whereabouts of the bankrupt's estate." *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D.Ariz. 2002). While the scope of a Rule 2004 examination may be broad, "a Rule 2004 examination must be both relevant and reasonable." *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997). Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis.1984),

In this case, the Rule 2004 Motion is neither relevant nor reasonable. First, this is a Chapter 7 bankruptcy case where an independent trustee is appointed to examine the financial affairs of the debtors. The Rule 2004 Motion was filed well before the first meeting of creditors was to occur, at which Sabias would have had the opportunity to examine the Sabias. Sabias cite nothing of concern in the Rule 2004 Motion regarding the Scotts' disclosures in their Schedules, Statement of Financial Affairs and related filings. Nonetheless, the Sabias seek to have the Scotts produce extensive documentation with respect to essentially every aspect of their Schedules, Statement of Financial Affairs and related filings. Such a request under these circumstances can have no legitimate purpose and amounts to nothing more than harassment. Indeed, if the Sabias were so interested in obtaining information from the Scotts, they could have attended the first meeting of creditors, which was held on July 22, 2013, but they did not.

As noted above, there is an independent Chapter 7 trustee appointed in this case to examine the financial affairs of the Scotts. The Sabias appear to have no special information or insights into the Scotts' financial situation that would raise express concerns or justify their independent investigations into the Scotts financial condition, apart from what the Chapter 7 trustee already has done or is currently undertaking. As a result, the duplicative efforts of the Sabias serve no legitimate purpose.

The first meeting of creditors now has been held and concluded. Therefore, the

requests sought by the Sabias are moot and the Rule 2004 Order should be vacated. To the extent the Sabias have any additional concerns, they can relay them to the Chapter 7 trustee, who can make the appropriate investigations.

Rule 2004 examinations cannot be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure. *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002)). "In order to prevent injustice, and to insure that parties in bankruptcy adversary proceedings have the same rights as parties to a federal suit in a non-bankruptcy context, it is important to insure that the procedural safeguards of the discovery process provided in Fed. R. Civ. P. 26-37, incorporated by reference in Fed. R. Bankr. P. 7026-7037, are not avoided by permitting a Rule 2004 examination while an adversary proceeding is pending." *2435 Plainfield Ave., Inc. v. Township of Scotch Plains (In re 2435 Plainfield Ave., Inc.)*, 223 B.R. 440, 456 (Bankr. D.N.J. 1998).

The same rationale applies where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court. *In re Enron Corp.*, 281 B.R. at 842. *See Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D.Tex.1994), *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir.1995) (mem.) (the use of Rule 2004 to further a state court action is an abuse of Rule 2004).

In this case, there is absolutely no basis to seek from the Scotts through a Rule 2004 request all documents provided to Sherman & Howard relating to the claims asserted in the State Court Action. Initially, the request is improper because it clearly relates to ongoing litigation in the Maricopa County Superior Court. The Sabias and Scotts are parties in the State Court Action. With regard to the State Court Action, the Sabias have requested modification of the automatic stay to allow them to proceed in connection with the Motion for New Trial filed by the Scotts. In addition, Sabias have filed the Second State Court Action in which the Sherman & Howard Defendants and the Scotts are named parties. Thus, the attempt to take discovery relevant to these actions through a Rule 2004 examination not only represents an improper use of Rule 2004, but it also is a violation of the automatic stay.

The request also has no legitimate purpose because the Sabias were participants in the trial in the State Court Action and already have, through discovery and other means, all the documents relating to the State Court Action to which they are entitled. The only exception would involve documents protected by the attorney-client privilege or are otherwise protected, which the Sabias would have no right to under any legitimate discovery effort. Thus, at a minimum, the request is designed to harass the Scotts by requiring them to produce what the Sabias already have. In addition, it appears that the requests made under Rule 2004 represent an attempt to obtain privileged and other protected communications between the Scotts and the Sherman & Howard Defendants (without the knowledge of the Sherman & Howard Defendants) to which they would have no entitlement through any legitimate discovery process.

In this case, there can be no question that the Sabias have acted with improper motive as the clear purpose of the request was to improperly and illegitimately further their positions in the pending state court actions. Mr. Strojnik admits this improper purpose in his email, wherein he states:

> [The Scotts' bankruptcy] works well for us because we have better access to his documents than we would otherwise have; in fact we have already obtained a Rule 2004 Order from the BK court ordering the Scotts to provide us with pretty much every shred of documentation in the [State Court Action].

This blatant abuse of the use of a Rule 2004 examination request must not be tolerated. The Rule 2004 Order should be vacated or limited to exclude the request for any documents or information relating to the State Court Action or any communications between the Scotts and Sherman & Howard.

**B.** **The Sabias have Failed to Comply With Local Rule 9013-1(e) and this Court's Procedures, which Require they Demonstrated that a Good Faith Attempt to Resolve this Discovery Dispute was Made.**

Local Rule 9013-1 entitled "Motion Practice" provides:

> (e) Discovery Disputes. No motion concerning discovery disputes will be considered unless a statement of the moving party or its counsel, if represented, is attached certifying that after personal consultation and sincere efforts to do so, the parties have been unable to resolve the matter

Further, this Court's procedures state:

> 9. DISCOVERY DISPUTES
>
> Judge Collins will not consider any motions concerning discovery disputes unless a statement of the moving party or its counsel, if represented, is attached certifying that after personal consultation and sincere efforts to do so, the parties have been unable to resolve the matter. (See Local Rule 9013-1(e)).

Initially, the required certification was not filed with the Motion to Compel, as required, but rather was filed on July 22, 2013, just three days before the hearing. More critically, reliance that a good faith attempt was made to resolve the dispute is based on an email exchange some three months ago between Sabias' counsel, Mr. Peter Strojnik, and Mr. Gregory Malkin, the prior bankruptcy attorney for the Scotts. The exchange begins with an email from Mr. Stojnik on April 26, 2013 advising that production of the documents was due that day. That same day, Mr. Malkin responded that the Scotts failed to appear at the first meeting of creditors and that the Chapter 7 trustee would be moving to dismiss the case. On April 27, 2013, Mr. Strojnik thanked Mr. Malkin for the information and Mr. Malkin responded that he was leaving the practice of law for health reasons and that the Scotts would be retaining new counsel. The exchange ends on April 27, 2013 with an email from Mr. Strojnik stating "Thanks, Greg. I hope all goes will [sic] with your health!"

Aside from the fact that there was no effort whatsoever to address issues regarding the Rule 2004 Order, this exchange took place nearly three months ago. Since that time, the Scotts have retained new counsel and the case has been reinstated. The Sabias filed their notice of hearing on the Motion for Sanctions on July 2, 2013. The Sabias did so apparently without any attempt to address this matter with new bankruptcy counsel for the Scotts. Clearly, there has not been compliance with the requirements under Local Rule 9013-1(e) or with this Court's procedures. For this reason alone, the Motion to Compel should be denied.

WHEREFORE, Sherman & Howard requests the Court to:

1. Deny the Motion to Compel;

2. Vacate or hold in abeyance the Rule 2004 Order;

3. In the alternative, modify the Rule 2004 Order to exclude documents in paragraph 9 relating to documents to the State Count Action and communications between the Scotts and Sherman & Howard, as well as questioning on these topics in any examinations that may take place; and

4. Award other and further relief as is just and proper.

DATED: July 24, 2013

                              SHERMAN & HOWARD L.L.C.

                              By  /s/ Bryan A. Albue (No. 009594)
                                   David A. Weatherwax
                                   Bryan A. Albue
                                   Dewain D. Fox
                                   201 East Washington Street, Suite 800
                                   Phoenix, Arizona 85004-2327
                                   Attorneys for Sherman & Howard L.L.C.

COPY of the foregoing served by
email on July 24, 2013 to:

Peter Strojnik, Esq.
STROJNIK, P.C.
2415 East Camelback, Suite 700
Phoenix, Arizona 85016
ps@strojnik.com
strojnik@aol.com
Attorneys for Chris and Pam Sabia

James Schollian, Esq.
SCHOLLIAN LAW FIRM, P.C.
1146 North Mesa Drive, Suite 102
Box 252
Mesa, Arizona 85201
scholljjsl@gmaol.com
Attorneys for Debtors

Constantino Flores
PO Box 511
Phoenix, Arizona 85001-0511
trusteeflores@floreslawaz.com
Chapter 7 Trustee

  /s/ Bryan A. Albue (No. 009594)